IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, <br><br> Plaintiff, <br><br> v. <br><br> J. NANOUH, INC., a corporation, d/b/a EXETER FAMILY RESTAURANT; and MICHAEL J. NANOUH, individually, and as a manager and corporate officer of the aforementioned corporation, <br><br> Defendants. | Civil Action No. 17-1458 |

**PLAINTIFF'S REPLY BRIEF**

## I.  Introduction

Plaintiff, the Secretary of Labor ("Secretary"), submits this Reply Brief to address the unsupported legal arguments and misrepresentations of the record in Defendants' Post-Trial Brief (ECF No. 61, Jan. 16, 2019, hereinafter "Defs.' Br."), and to identify numerous points on which the Defendants have conceded the Secretary's position.  Throughout the course of the Secretary's investigation and subsequent litigation, Defendants have denied that they violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., until confronted with clear evidence otherwise.  They continue that practice in their brief, admitting to violations but asking the Court to mitigate the damages in their favor.  In doing so, they ask the Court to ignore unfavorable case law and to expand exemptions beyond well-established precedent.

## II.  Defendants' Brief concedes violations

As an initial matter, despite numerous previous denials, Defendants now concede they violated the FLSA in numerous ways.  Defendants concede that they never properly paid

overtime other than the one-time exception that the Secretary identified in his case.  They concede that they routinely paid sub-minimum wages by paying cash rates less than $2.13 an hour, invalidating any claim of the tip credit.  They concede that by charging for uniforms they paid employees less than the minimum wage in initial weeks and should owe liquidated damages.  And they concede that they completely failed to pay employees for hours worked before and after their "scheduled" shifts, although they still disclaim responsibility for some of those hours.

### A.     *Defendants concede that they did not pay overtime*

Defendants concede that that employees worked overtime and that they were not paid overtime rates because it was their practice to pay hours above 40 in a week in cash at sub-minimum wages.  They claim that Kimberly Terra, Sandra Wilson, Ashley Hines and Rebecca Minicozzi all worked overtime for $2 an hour in cash.  Defs.' Br. at 7, 8, 11.  The record actually shows that some hours for all servers were completely unpaid, tr. at III:74:11-24, III:107:7-11, and the servers who were paid cash for regular time and/or overtime did not agree that they always made $2 per hour.  Wilson Declaration ¶ 7.  Because Defendants cannot claim the tip credit, they must pay every server who worked overtime sufficient back wages to get them to $10.88 per overtime hour. Defendants also concede that Ivan Garcia was paid a flat rate for all hours worked rather than time and a half.  Defs.' Br. at 32.  They have not disputed that he was subject to deductions in his pay for hours missed at the restaurant's convenience.  Therefore, Defendants concede Garcia is an hourly employee, not salaried, per 29 C.F.R. § 541.602 and is due additional half time on his overtime hours.

### B.  *Defendants concede that they paid less than minimum wage and that they failed to provide notice of the tip credit*

Defendants also concede that they routinely paid less than the minimum wage. For example, as discussed above they concede that servers were paid sub-minimum wages in cash for many hours worked. See, e.g. Defs.' Br. at 7 (Terra), 16 (Wilson), 37 (Brenda Alena). They also concede that servers were not notified of the tip credit. As they note, Amanda Graul was not notified of how she was going to be paid. Defs.' Br. at 8, Tr. at I:100:3-7. Likewise, they concede that Rebecca Minicozzi had no notice from Defendants regarding the tip credit; all of her understanding of that rule came from previous jobs. Defs.' Br. at 15, tr. at III:77:6-8.[1]

### C.  *Defendants concede uniform violations and liquidated damages*

At trial, Defendants conceded that their policy of making new employees pay for uniforms was a minimum wage violation. Tr. at III:131:19 to 133:21. They now concede that they are liable for liquidated damages as well. Defs.' Br. at 33.

### D.  *Defendants concede that they required employees to work uncompensated time*

Defendants' brief underlines what the testimony already made clear: that Defendants not only suffered and permitted work that they did not pay for, they required it. "The expectation for the servers was to be there 15 minutes in advance of the beginning of your shift." Defs.' Br. at 7. Those 15 minutes were never paid by Defendants because they ignored the time clock in favor of handwritten schedules that benefitted the business. Tr. at III:121:5-5, GX-14 (interrogatory response no. 1). Likewise, Defendants ignored hours worked by employees after their shifts were supposed to have ended. *Id.* Defendants attempt to disclaim responsibility for the work of their employees, saying that if a server worked more, that was their choice. Defs.' Br. at 7.

---

[1] Neither prior understanding of the tip credit by an employee or the presence of a poster are proper notice of the tip credit, despite Defendants' assertions to the contrary. See *infra* Part III for discussion of this point.

The record shows that it was not the choice of the servers to start early or remain late. Defendants suffered and permitted this pre- and post-schedule work, indeed, they required it. As Defendants have admitted, employees had to be at work at least 15 minutes before their shift. Tr. at I:70:23 to 71:1, I:104:10, III:86:16, Defs.' Br. at 7. Defendants did not record 15-minute increments on their handwritten schedules, however. Tr. at III:112:24 to 113:1. The time clock shows when servers truly started working because they signed in when they were ready to start taking orders—which they could not do without signing in on the clock. Tr. at I:111:22-24, II:17:24-25. There is no work more beneficial to Defendants than selling food; it is the business of the restaurant. Likewise, the time clock record is the most accurate record of when employees stopped working because it shows when (1) that they could no longer serve customers for the night, and (2) when they went to their supervisor to get cash for their credit card tips, which they could not do without signing out and stopping work. Tr. at I:89:13, I:93:19-21. Defendants cannot simply ignore that employees were working when Michael Nanouh or a member of his family was usually present as supervisor at the same time. Tr. at II:21:12, III:204:1-5. Even if the servers were not taking orders, they were doing essential "side work" at the direction of managers, such as restocking supplies, cleaning, and making coffee. Tr. at III:93:8 to 94:25. If side work was not done, Michael Nanouh or another manager would question the server about it. Tr. at III:71:9-15. These were not employees working in some remote location without supervision; they were in the open in a restaurant. If Defendants did not want them to be doing this work, they had every opportunity to stop it from happening.

**III.    Defendants do not qualify for the tip credit**

Defendants argue that they are entitled to claim the tip credit towards their minimum wage obligation pursuant to FLSA Section 3(m), 29 U.S.C. § 203(m), because the Secretary's

regulations are "not retroactive" with respect to employees who were hired before 2011 and because Defendants claim to have provided adequate notice of the tip credit.  The Court should reject both of these arguments.  Defendants do not qualify for the tip credit because, among other reasons, they never notified their employees that they were taking the tip credit.

### A. *The Secretary is not "retroactively" applying the tip credit regulations*

Defendants claim that the Secretary cannot apply the current tip credit regulations (29 C.F.R. Part 531 Subpart D) to any employees hired before those regulations went into effect in 2011.  Defs.' Br. at 24.  Defendant cites *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d, 670 (D. Md. 2012) in support of this position.  As an initial matter, this is an admission that Defendants are not in compliance with law and rules of the tip credit.  Moreover, *Dorsey* does not say that the 2011 regulations allow any defendant to evade minimum wage protections for employees hired before 2011 at any time in the future.  Rather, the case dealt with violations that occurred before the rule came into effect.  *Dorsey*, 888 F. Supp. 2d at 683.  That court found that pre-2011 violations could not be covered by the 2011 regulation.  *Id.* at 684-5.  While Defendants in the present case appear to have been failing to pay minimum wage or properly noticing the tip credit for decades, the Secretary is only pursuing back wages for violations that occurred between 2014 and 2018.  GX-8.  As a result, Defendants' retroactivity argument is both wrong and irrelevant.[2]

---

[2] Taken to its logical conclusion, Defendants' argument would mean that Defendants are "grandfathered," indefinitely, into prior FLSA law for anyone they happened to have hired before the law changed.   Presumably, Defendants would also argue that an employee who was working for them before the minimum wage increased to $7.25 per hour could continue to be paid the old, lower minimum wage – which of course is not the case.

5

### B.     *Defendants did not provide the required notice of the tip credit*

*Dorsey* actually supports denying Defendants the tip credit, as it is one of many cases, including ones that are binding precedent on this Court, that confirm Defendants must take affirmative steps to notify the servers of the tip credit.  Since Defendants never did any such thing, they are not eligible for the credit.  "Courts have widely interpreted section 203(m) to require at a minimum that an employer inform its employees of its intention to treat tips as satisfying part of the employer's minimum wage obligations." *Dorsey*, 888 F. Supp. 2d at 681. *See also Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) ("Section 3(m) therefore allows an employer to reduce a tipped employee's wage below the statutory minimum by an amount to be made up in tips, but only if the employer informs the tipped employee that her wage is being decreased under section 3(m)'s tip-credit provision.")

Defendants never informed their employees as required by *Chez Robert*.  They claim that the out-of-date poster on the premises was by itself adequate notice.  The cases they cite do not support that conclusion, however.  In none of them was the presence of the standard Wage and Hour poster by itself sufficient notice of the intent to take the tip credit.  In two appellate cases cited by Defendants, the court held that that notice was given when restaurants used a combination of a poster *and* also provided a notice in employee handbooks that were given to employees.  *Schafer v. Walker Bros Ent.*, 829 F3d 551, 556 (7th Cir. 2016); *Kilgore v. Outback Steakhouse of Fla.*, 10 F.3d 294, 298 (6th Cir. 1998).  Defendants never had a handbook for their employees, nor did they provide offer letters explaining the tip credit or any other documentation, so they would not meet the tests laid out by either court.  Tr. at I:38:5-8, I:83:9-12, I:100:9-10, II:8:1.

The Third Circuit has not addressed this question, but several district judges have found that oral notice is sufficient after restaurant defendants showed evidence that oral notice had

6

actually occurred. For example, a restaurant gave notice when it showed that it had a written policy that managers were to provide the tip credit notice upon hiring servers and there was evidence that they had a consistent practice of actually providing the notice. *Calabrese v. TGI Friday's Inc.*, No. 16-CV-0868, 2017 WL 5010030, at *5 (E.D. Pa. Nov. 2, 2017), *appeal dismissed sub nom. Calabrese v. TGI Fridays Inc.*, No. 17-3626, 2018 WL 2717778 (3d Cir. May 15, 2018).[3] By contrast, Defendants concede that no oral notice was given, and the only information servers had was from prior experiences at other employers or the poster. Defs' Br. at 26. Not a single person, not even Michael Nanouh, testified that there was ever oral notice of the tip credit given.

Defendants cite *Acosta v. Las Margaritas, Inc.*, E.D. Pa. No. 16-1390 (December 27, 2018), but in that case the court found that the employer in question had held a formal meeting and explained the tip credit to at least some of its employees. The court also relied on a written letter the employer claimed it provided to employees at that meeting, and to later-hired employees when they were hired. 2018 WL 6812370 at *9. Again, this is much more information than Defendants provided their employees, despite the Secretary's investigation and Michael Nanouh's practice of holding regular meeting on other topics.

In asking the Court to allow them to claim tips towards their minimum wage and overtime obligations, despite their failure to provide notice of the tip credit, Defendants ignore the Third Circuit's clear and binding holding that "[t]he notice requirement is a firm one." *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994). The *Chez Robert* court, quoting from the First Circuit's decision in *Martin v. Tango's Restaurant*, stated:

---

[3] Defendants also cite *Koenig v. Granite City Food & Brewery*, W.D. Pa. No. 16-1396 (May 11, 2017). That court specifically noted that it was not ruling on the tip credit, but merely on class certification. 2017 WL 2061408 at *3.

> It may at first seem odd to award back pay against an employer, doubled by liquidated damages, where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit and the courts have enforced the requirement…. If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide.

28 F.3d at 404 (citing 969 F.2d 1319, 1323 (1st Cir. 1992) (internal citations omitted)).

The *Chez Robert* court went on to explain that:

> In this case, the district court did exactly what *Tango's Restaurant* instructs against doing: that is, alleviate the harsh results of the notice requirement by reducing damages out of an equitable sense that some offset for tips should be allowed. 821 F.Supp. at 985. If such a ruling were permissible, the district courts would effectively have discretion to waive the notice requirement in the interests of perceived fairness to the employer. While that is perhaps not in itself an undesirable power for the district courts to have, it is not, as the First Circuit tells us, what the statute permits.

*Id.*  In arguing that a poster and prior experience satisfy the tip credit notice requirement, Defendants ask the Court to shift the burden of notice to employees, which the Third Circuit Court of Appeals explicitly declined to do.  The present case illustrates the consequences of the lack of notice particularly well.  Employees did not know what they were being paid.  Several testified, for example, that they thought Defendants were taking taxes out of their wages when Defendants were doing no such thing.  Tr. at I:48:21, I:153:10-12.  Not only did Defendants take wages that belonged to their employees by doing this, they were actively misleading their employees as they did so.

**IV.**   **Defendants must pay full liquidated damages**

Defendants concede that they are liable for at least some of the liquidated damages sought by the Secretary (for making employees pay for uniforms).  Defs.' Br. at 33.  Defendants ask the court not to award liquidated damages for the larger portion of damages (unpaid minimum wages and overtime) because although "the employer was not perfect with respect to

8

paying its employees . . . . its violations of the FLSA were not willful." Defs.' Br. at 47. Although Plaintiff contends that the violations were willful, as discussed below, willfulness is not the test with regard to liquidated damages. It is Defendants' burden to show that it had good faith and reasonable grounds for its conduct. 29 U.S.C. § 260, *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir. 1991). Past or long-held practices are not a defense to liquidated damages. *Williams v. Tri-City Growers*, 747 F.2d 121, 129 (3d Cir. 1984). Rather, employers have an affirmative obligation to attempt to ascertain the FLSA's requirements. *Id.* Moreover, as discussed above, the record shows that Defendants chose to pay less than the minimum wage, chose not to pay for all hours worked, chose not to pay full overtime wages, and then attempted to conceal those facts to the Secretary's Wage and Hour Division upon investigation. According to the testimony of their head server, Susan Troxel, Defendants still have not produced some time records to the Secretary. Tr. at III:98:8. These are not actions taken in good-faith compliance with the FLSA.

      Defendants again attempt to deflect responsibility for violations that benefitted their business by claiming that being paid less than minimum wage and no overtime was what the servers wanted. Defs' Br. at 47. None of the servers actually testified that they wanted to be paid sub-minimum cash wages, however. Several stated that they eventually asked to be paid by check. *E.g.* tr. at I:152:3-5 ("I've decided to make it all check. . . . [I]t's better" (Brenda Alena)). Even if "what the employees wanted regardless of the law" was the test to avoid liquidated damages, it is unclear why it suited the servers to be paid less than they were owed, but it clearly served Defendants well. Paying less than the minimum wage and no overtime premium was not reasonable. Allowing employees to falsely think that taxes were coming out of

cash wages was not reasonable. The Court should find that full liquidated damages for the servers are appropriate.

The same is true with respect to the lack of overtime payments to Ivan Garcia-Lopez. Defendants claim that Mr. Garcia-Lopez is not entitled to overtime at all, but have not produced evidence to meet their burden for that "executive or administrative employee" affirmative defense. Nor do they meet the burden of defeating liquidated damages. Defendants claim that they believed in good faith that they did not have to pay Mr. Garcia-Lopez overtime. Defs.' Br. at 28. They identify no affirmative steps that they took, however, to find out if Mr. Garcia-Lopez could be treated as an exempt manager. Simply pointing to their past practices is not enough. *Tri-City Growers*, 747 F.2d at 129. Defendants were obligated to actually look into what they were doing, and they did not do so. Defendants claim in their brief that Mr. Garcia-Lopez acted as a supervisor, but they identify no specific instances when he hired, fired, disciplined, scheduled, or in any way controlled the line cooks in the kitchen. Mr. Garcia-Lopez testified that he did not do any of those tasks. Tr. at I:181:15-25. The "ordering" that Defendants claim Garcia-Lopez did was nothing more than checking the stock levels on a list created by Chief Darren Renninger and calling suppliers accordingly. Tr. at I:81:3-6. Even Michael Nanouh called it "a simple process." Tr. at III:155:1. Garcia-Lopez's discretion was not "critical to the succcesful operation of the enterprise. *Guthrie v. Lady Jane Colleries, Inc.*, 722 F.2d 1141, 1145 (3d. Cir. 1983).

Defendants' claim that Garcia-Lopez was a salaried executive also is not reasonable, failing the second part of the test for liquidated damages. As discussed above, his discretion was not critical—he was left with no discretion to exercise. *Lady Jane*, 722 F.3d at 1145. Even more significantly, under no objectively reasonable interpretation of the law could Garcia-Lopez be

deemed to satisfy the salary basis prong of the executive exemption. Any time that it suited Defendants to send Garcia-Lopez home early, or keep him out of work, they did so, and did not pay him for the time missed. Tr. at I:189:13-20. Defendants have not contradicted this testimony. It is clear under longstanding FLSA regulations that Garcia-Lopez was not being paid a bona fide salary. 29 C.F.R. § 541.602. Accordingly, there was no reasonable basis to treat him as ineligible for overtime, and Defendants are liable for full liquidated damages.

## V.     Defendants willfully violated the FLSA

Defendants' claim that their conduct was not willful is contradicted by numerous facts they admit or that are otherwise undisputed. Defendants have acknowledged a long history of actively avoiding their minimum wage and overtime obligations under the FLSA. Not only did they mislead their employees and the Wage and Hour Division about their use of cash payments, they consciously did not report those payments or hours worked to their accountants, who handled the check portion of the payroll. It is clear from the payment of overtime to Rebecca Minicozzi—the one time that Defendants actually paid overtime wages—that if Defendants reported more than 40 hours worked in a week, then their accountant would pay at overtime rates. Tr. at III:61:15, GX-5 at 24. Defendants never told the accountants about overtime hours again. Such conscious falsification of records is evidence of willfulness. *See Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002) (holding that knowingly under-reporting hours could be evidence of willfulness).

Defendants knew exactly what the minimum wage was for tipped employees and chose not to pay it for a large portion of the hours that their employees worked, instead admitting that they used off the books cash at a lower rate. Defs' Br. at 10, 14, 16. They also knew that overtime was the law. Tr. at III:195:25. Yet even after the Secretary's investigation was

11

underway they failed to pay overtime wages. Tr. at III:193:1-2, GX-8. These were willful failures to pay minimum wage and overtime. Defendants further set policies ensuring that their employees would not be paid at all for many hours worked by using inaccurate records and then making every inference in their own favor, such as rounding down from 15, 30, and even 45 minutes to the next lowest hour. Tr. at III:107:7-11. Defendants kept track of the details of sales down to how many cheese slices they sold, and the associated profits. Tr. at III:150:6-7, III:157:7. Yet they ignored the reports from the same computer system about how much their staff was working, and kept no true records of how much they were paying their staff. Tr. at III:156:15 to 157:1. The Court should find that the failure to pay minimum wage and overtime to servers was willful.

With respect to assistant chef Ivan Garcia-Lopez, Defendants claim that their failure to pay him overtime was not willful because they had "a good faith reliance that an employee is an executive or administrative exemption." Defs' Br. at 28.[4] But as discussed above, Defendants did not act with good faith toward Garcia-Lopez. Moreover, as with the servers, the evidence shows that Defendants' failure to pay overtime to Garcia-Lopez was willful. They deliberately hid records of Garcia-Lopez's hours from their own accountants by paying hours above 40 in cash and at straight time, even after Garcia-Lopez asked to be paid on a check basis. Tr. at I:187:14-17. If Defendants believed that Garcia-Lopez was eligible to be a salaried employee they would have told their accountant so that they could have full records of his pay; yet they did

---

[4] Defendants conflate the tests for liquidated damages and willfulness with their use of "good faith." Regardless, Defendants cannot claim that it was good faith to rely on their at-best ill-informed personal opinions that Garcia-Lopez was exempt. This is particularly the case when they paid him as an hourly and not a salaried employee and as discussed herein, his duties were clearly not managerial. Failure to pay overtime along with failure to maintain records (both of which Defendants did) is "bad faith." *Marshall v. Brunner*, 688 F.2d 748, 753 (3d Cir. 1982).

12

not do this. Defendants' claim that Garcia-Lopez was properly salaried also rings false when considering that whenever he worked less hours, they paid him less money, in clear violation of the law and the common sense definition of salary. Tr. at I:189:13-20, 29 C.F.R. § 541.602. Similarly, Defendants claim that Garcia-Lopez's duties make him an executive when they gave him no actual discretionary duties, as even Michael Nanouh acknowledged. Tr. at III:155:1. Their failure to actually treat Garcia-Lopez as an executive shows that Defendants did not believe the story they now ask the Court to accept, that he was note entitled to overtime. Their failure to pay overtime was willful because Defendants knew that nobody would believe that Garcia-Lopez was an executive if they knew the facts.

### VI. Defendants' wage calculations are not reliable

The Court should not use the wage calculations proposed by Defendants. They ask the court to flip the rationale of the seminal U.S. Supreme Court decision in *Anderson v. Mt. Clemens Pottery* by allowing Defendants to present representative testimony to mitigate their failings. Defendants then ask the Court to let them use this representative testimony even more broadly to take credit for paying $2 for hours that were truly unpaid. Defendants also assume that they are entitled to the tip credit when all of the evidence shows that they are not. Their calculations ignore overtime that is due to employees, and misrepresent the testimony of specific employees. Ultimately, the Secretary has produced a reasonable estimate of damages and Defendants have failed to rebut it with specific evidence. As such, the Court must use the damages calculations of the Secretary.

In asking for credit for cash they claim to have paid, Defendants ask that the Court find that the "representative" testimony of the servers was that they always got $2 cash for off-the-books hours. As an initial matter, employers may not use representative testimony. *Anderson v.*

*Mt. Clemens Pottery*, 328 U.S. 680, 687 (1946) (employer must "come forward with evidence of the precise amount of work performed"). Furthermore, employees did not uniformly testify that they were paid $2 per hour in cash or that they had any idea how much they were being paid week-to-week. Tr. at II:26:2-3 (Ashley Hines believed that Defendants were paying her the regular $2.83 but taking out taxes), III:63:6-25, III:74:11-24 (Rebecca Minicozzi believed she got $2 in cash per hour, but also testified that she was not paid for all of her time because Defendants always rounded fractions of an hour down). Sandra Wilson stated in her declaration that she was paid around $40 per pay period in cash, which is significantly less than $2 per hour when she averaged 33 hours per pay period in overtime. Wilson Declaration ¶ 7, GX-8. Ella Polonski and Amanda Graul said they did not get cash. Tr. at I:90:7, 113:5. Many other employees have unpaid hours appearing on the records and Defendants did not have any of them testify as to whether they were paid any amount of cash. Nor did defendants make any effort to find records of their cash payments (Michael Nanouh: "I did no thorough search." Tr. at III:158:19). Defendants did not even try to find evidence to meet their burden of showing what hours were worked and paid.

Many of the hours were truly unpaid, however, and not paid with under-the-table cash. GX-8, Tr. at III:107:7-11. When Defendants paid based off of their handwritten schedules, they cut off the 15 minutes that they required servers to report to work prior to the actual scheduled start of their shift, which as discussed above and conceded by Defendants, was compensable time. Defs' Br. at 7. They also cut off extra time worked by servers who could not leave at their scheduled time. Tr. at I:114:12-21. Again, this was compensable and often completely unpaid time. Even if it was partly paid, Defendants rounded hours down to the next low whole hour when paying cash rates. Even Defendants' own witnesses testified that they had completely

14

unpaid time. Tr. at III:74:11-24 (Minicozzi was not paid for increments of hours). Susan Troxel explained that if she worked 2 hours 45 minutes she would only be paid cash for the two hours, and nothing for the 45 minutes. Tr. at III:107:7-11. It was not the obligation of these employees to keep track of their pay or hours worked. Defendants failed to do so, and must bear the cost of the resulting uncertainty.

Defendants assume that they qualify for the tip credit in their back wage calculations when it is clear from the record, as discussed above, that they do not. Defendants have never provided notice of the tip credit to their employees, nor did they pay the mandatory $2.13 per hour. They cannot now claim that the employees were tipped because "an employer is not eligible to take the tip credit unless it has informed its tipped employees *in advance* of the employer's use of the tip credit." 29 C.F.R. § 531.59(b) (emphasis added), *see also Chez Robert*, 28 F.3d at 404 (finding that restaurant was barred from taking tip credit without notice), *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 729 (E.D. Mo. 2015) (defendants cannot take tip credit retroactively, citing regulations), *Meetz v. Wisconsin Hosp. Grp. LLC*, No. 16-C-1313, 2017 WL 3736776, at *5 (E.D. Wis. Aug. 29, 2017) ("the employee must receive advance notice of the tip credit"), *McFarlin v. Word Enterprises, LLC*, No. 16-CV-12536, 2018 WL 1410827, at *4 (E.D. Mich. Mar. 21, 2018) (denying retroactive change to tip credit amount, citing *Chez Robert*). *See also Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 242 (5th Cir. 2016) (employer may take tip credit only if they pay $2.13 per hour and otherwise satisfy burden to prove that it is entitled to tip credit). Since Defendants do not include tip-credit restoration payments in their calculations, those calculations are not reliable for the Court.

Defendants concede that they owe overtime payments to several employees based on the formula used by the Secretary.[5]  Defs' Br. at 40 (Hines), 42 (Minicozzi), 44 (Terra).  This speaks to the reasonableness of the Secretary's calculations.  It also is a concession that Defendants are not entitled to the tip credit, because the Secretary assumes as much in his calculations.  For example, Defendants accept without contest that Ms. Minicozzi is due $660.95 in overtime back wages.  That amount was calculated without crediting any of Ms. Minicozzi's tips towards her back wages due.  Thus, by accepting that number Defendants appear to accept the premise that they are not entitled to claim the tip credit for Ms. Minicozzi.  And the basis for denying the tip credit for Ms. Minicozzi applies equally to the other employees due back wages.

Despite that, Defendants contest the same formula when used for Sandra Wilson, presumably because Ms. Wilson worked three times as much overtime as any other server and is due a correspondingly larger amount.  GX-8.   Defendants attempt to claim a $2 per hour credit against Ms. Wilson's overtime back wages.[6]  However, Ms. Wilson did not say that she was paid $2 per hour for those overtime hours.  Defendants are trying to use representative testimony from other servers as evidence against Ms. Wilson, which as discussed above, is not permitted.  *Mt. Clemens*, 328 U.S. at 687; *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir. 1991) ("once the Secretary's prima facie case is made, the burden shifts to the employer to dispute it with precise evidence of hours worked. This [defendant] has failed to do.").  All

---

[5] The Secretary calculated that servers are due at least $3.63 per overtime hour, which is half of the minimum wage of $7.25.  This is in addition to minimum wage payments that are due for the same hours because Defendants do not qualify for the tip credit, and to reimburse servers for completely unpaid time.   Because Defendants do not qualify for the tip credit, all overtime hours should have been paid at $10.88 ($7.25 times 1.5) for all overtime hours.

[6] Defendants also claim that they should get the tip credit for Ms. Wilson, as with all of the servers.  However, Ms. Wilson stated clearly that she did not get notice of the tip credit.  Wilson Declaration ¶ 8.  Far from disputing the veracity of Ms. Wilson's statements, Defendants claim to rely on them.

Wilson said about her cash payments was that they were biweekly and "[t]he cash payment was usually around $40." Wilson Declaration ¶ 7. Given that Ms. Wilson averaged 33 overtime hours per two weeks (GX-8), this does not equal a $2 per hour rate. Ms. Wilson was not required to keep track of her hours; Defendants were. The Court cannot rely on Defendants' overtime arguments with regard to Ms. Wilson. The Secretary has presented a reasonable inference based on the records available and violations proven at trial and his damages calculation should be upheld.

The Secretary's back wage calculations were reasonable. They used Defendant's time records whenever possible, accounted for actual time worked and took into account all traceable payments. Defendants would have the Court substitute speculation for the reasonable inferences of the Secretary's calculations. The Court cannot use the back wage guesswork of Defendants as a reasonable basis to repay employees that Defendants admit they underpaid.

## VII.   The Secretary is entitled to injunctive relief to restrain Defendants from continuing to violate the FLSA.

Defendants contend that no injunctive relief is necessary in this matter because they have come into compliance. That rings hollow, however, when since early 2018, when they supposedly came into compliance, Defendants have repeatedly violated the FLSA per the testimony of their employees. They asserted through the trial that their handwritten schedules were more accurate than time clock records, even after disclosing mid-trial that they had not even produced the most accurate version of the handwritten schedules to the Secretary. Tr. at III:98:8. They provided an employee with a means to evade their cap on overtime with a secret log-in card. Tr. at I:53:1-18. And Defendants continue to assert that they have complied with the tip credit rules when there is still no evidence that employees have ever been given notice of

the tip credit, even to the present day.  The Court should have no confidence that Defendants will actually comply with the FLSA given their history of false promises.

**VIII.   The Court should allow full recovery of damages for all employees on the amended Schedule A**

The Court ruled at the start of the hearing that the Secretary could not amend Schedule A of the Complaint to reflect additional damages and employees who are owed back wages.  Tr. at I:30:14-17.  The Court has denied without prejudice the Secretary's Motion to Reconsider in a March 11, 2019, Order (ECF No. 64), ruling that it would take up the question in its final ruling.  As set forth in the Secretary's Motion for Reconsideration (ECF No. 45, July 26, 2018) amendments to the list of employees and damages in FLSA actions are not prejudicial to employers, who had all available evidence at all times, and that courts should remedy all violations at one time, rather than forcing the Secretary to bring an additional action.  At the end of the day, the Court should award all employees the back wages and liquidated damges due under the law as a result of the Defendants' violations.  Updates to the Schedule A did not bring new claims into this case, as the Secretary had already identified the tip credit as an issue in his original prehearing report.[7]  Plaintiff's Pretrial Memorandum, ECF No. 27 at 2-3 (April 19, 2018).  The Secretary alleged minimum wage and overtime claims in its original Complaint. ECF No. 1, at 2-3 (March 31, 2017)**.**  The Court should award all of the damages arising from such violations, which includes any failure to pay the minimum wage (and the proper overtime premium) due to an improper tip credit claim, unless Defendants can satisfy their burden of establishing an entitlement to the tip credit. As set forth above, they cannot. The revision simply

---

[7] In addition, it has always been Defendants' burden to prove that they are entitled to the tip credit. *Reich v. Chez Robert*, 28 F.3d 401, 403 (3d Cir. 1994).

represented an updated computation based on a complete review of all of the information provided by Defendants.

Furthermore, since the initial ruling and the filing of the Motion to Reconsider, there have been new facts that the Court should account for while issuing its final decision. On the morning that the Secretary filed the Motion to Reconsider, Defendants for the first time acknowledged that there were additional relevant records that were never, and have never, been turned over to the Secretary, in the form of additional schedules kept by Susan Troxel, the head server. Tr. at III:97:25 to 98:16. Additionally, Defendants have, as discussed above, now conceded numerous violations of the FLSA that they denied previously. For these reasons, as well as those previously stated in the Motion to Reconsider, the Court should allow the expanded Schedule A and full recovery to all victims of the failure to pay minimum wages and overtime.

## IX. Conclusion

For the reasons discussed herein and in the Secretary's original Post-Hearing Brief (ECF No. 54, Nov. 19, 2018), the Court should find that Defendants are liable for $661,923.22 in back wages and an equal amount of liquidated damges, for a total of $1,323,846.44; and grant injunctive relief against future violations of the FLSA.

Respectfully Submitted,

| | |
|---|---|
| Post Office Address: | Kate S. O'Scannlain<br>Solicitor of Labor |
| Oscar L. Hampton III<br>Regional Solicitor<br>Office of the Solicitor<br>U. S. Department of Labor<br>Suite 630E, The Curtis Center<br>170 South Independence Mall West<br>Philadelphia, PA 19106-3306<br>(215) 861-5122<br>(215) 861-5162 (fax)<br>epstein.matthew.r@dol.gov | Oscar L. Hampton III<br>Regional Solicitor<br><br>Adam Welsh<br>Regional Counsel for Wage and Hour<br><br>/s/Matthew R. Epstein<br>Matthew R. Epstein<br>Trial Attorney<br>PA Bar ID. No. 209387 |
| Date: March 15, 2019 | U.S. DEPARTMENT OF LABOR |