IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AL STEWART,
ACTING SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,

                    Plaintiff,

     v.

J. NANOUH, a corporation, d/b/a EXETER
FAMILY RESTAURANT; and
MICHAEL J. NANOUH, individually, and as a
manager and corporate officer of the
aforementioned corporation,

                  Defendants.

CIVIL ACTION
NO. 17-1458

## MEMORANDUM OPINION

**Schmehl, J.**   **/s/ JLS**                           **March 1, 2021**

     This matter was filed by the United States Secretary of Labor on March 31, 2017, against J. Nanouh, Inc. d/b/a Exeter Family Restaurant, and Michael Nanouh. The Secretary claims that the defendants violated various provisions of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201, *et seq.*, including failing to pay minimum wage and overtime, requiring employees to pay for uniforms, and failing to maintain proper records. The Secretary further claims that the violations were willful, liquidated damages should be enforced, and an injunction is necessary to ensure that the defendants comply with the FLSA in the future.

     A four-day bench trial began on July 23, 2018, thereafter, the parties submitted their post-trial briefs and responses thereto. Below, I rule on the Secretary's Motion for Reconsideration of an evidentiary ruling, and make findings of fact and conclusions of law from the bench trial.

## BACKGROUND

Defendant, the Exeter Family Restaurant, was purchased by Joseph Nanouh and a partner in 1999. The restaurant is a twenty-four-hour diner in Reading, Pennsylvania, that typically does about $2,000,000 in sales per year. Joseph's son, defendant Michael Nanouh, is the main manager of the restaurant who handles everything from running the hostess booth and cashing customers' tabs, to hiring employees and telling employees to prepare condiments and silverware.

The Secretary alleges that the defendants failed to pay minimum wage and overtime, improperly required employees to pay for their own uniforms, failed to properly keep records, that the violations were willful, that liquidated damages should be enforced, and that an injunction is necessary to ensure future compliance with the FLSA. The Secretary also claims that defendant Michael Nanouh should be held individually liable because his role and duties at the restaurant render him an "employer" as defined under the FLSA.

The defendants admit to many of the alleged violations but have various defenses to others. The defendants admit that they required employees to pay for uniforms, that they sometimes paid employees under the minimum wage amount, and that they failed to properly pay overtime. The defendants' main argument is that since they paid employees some amounts, they should be credited for those payments when accounting for damages, and those payments also show their good faith effort in complying with the FLSA. Lastly, defendants claim that they reasonably believed that their Sous Chef, Ivan Garcia, was an exempt salaried executive who should only be due overtime payments for two years rather than three.

**DISCUSSION**

1. <u>Plaintiff's Motion for Reconsideration is Denied.</u>

The Secretary motions the Court for reconsideration of the Court's July 23, 2018, Order that precluded certain evidence pertaining to damages at trial. The Order precluded the Secretary's amended Schedule A, and Exhibits 8, 16, 23, 24, and 25 under Federal Rules of Civil Procedure 15 and 26.

Absent new evidence, need to correct a clear error of law or fact, to prevent manifest injustice, or due to an intervening change in the controlling law, a motion for reconsideration is not proper. *Romero v. Allstate Ins. Co.*, 1 F.Supp.3d 319, 420-21 (E.D. Pa. 2014) (citations omitted). Here, the Secretary does not explicitly allege that new evidence, new law, or a manifest error supports his motion for reconsideration.[1] Rather, the Secretary just rehashes arguments that were already heard during the motion in limine. Nonetheless, the Court does not find any new evidence, new law, or manifest errors, therefore, the motion for reconsideration is denied. I will amend my previous Order to admit the previously precluded evidence to the extent that the evidence is relevant and applicable to the computation of damages for the admitted Schedule A.

A. *Relevant Facts.*

On March 31, 2017, the Secretary filed the complaint against the defendants. (ECF #1.) Attached to the Secretary's complaint was "Schedule A," which named twenty employees who were allegedly due damages based upon the FLSA violations. (*Id.*) At the time, Schedule A just named the twenty employees and did not allege any specific sum of damages.

---

[1] To the extent the Secretary is arguing that I made a clear error of law or fact, my analysis below answers any such concerns.

As the case proceeded, an October 2017 Case Management Order set a final discovery deadline for January 5, 2018, a final pretrial conference was set for April 26, 2018, and the bench trial was to begin on May 16, 2018. (ECF #14, 17, 18, 21, 25.) Ahead of the final pretrial conference, both parties submitted pretrial memorandums. Attached to the Secretary's pretrial memorandum was an updated and amended Schedule A. (ECF #27.) The Schedule A was updated to the extent that it added three employees, for a total of twenty-three employees, and included categories of damages for each employee. The damage categories included back wages plus uniform expenses, liquidated damages, and added the two categories to show the total sum of damages sought for each of the twenty-three employees. (*Id.*) The total damages sought for all employees was $250,692.08. (*Id.*) The Secretary's pretrial memorandum stated that he "expects to file a Motion for Leave to File Supplemental Schedule A to include an *additional six tipped employees* identified in discovery. . . ." (ECF #27.) (emphasis added).

The Secretary never filed that "Motion for Leave to File Supplemental Schedule A." Instead, the day after the final pretrial conference, on April 27, 2018, the Secretary moved for continuance of the trial, which the defendants opposed. (ECF #30.) The Secretary claimed that "out of fairness to both parties and all witnesses" the trial should be continued to a later date because the Court had two consecutive days for the bench trial, not three, and based upon issues raised at the pretrial conference there were "new factual claims regarding the amounts of purported cash payments to employees." (*Id.*) The Court granted the continuance and rescheduled the trial to begin on July 23, 2018. (ECF #35.)

On July 13, 2018, the Secretary filed a new pretrial memorandum that included an "Exhibit A" and a "Supplemental Schedule A." (ECF #37.) "Exhibit A" amended the prior "Schedule A" by adding more employees and damages. The "Supplemental Schedule A" just redundantly listed the employees by name, and included a footnote stating that supplementing Schedule A was "routine and purely ministerial." (*Id.*) The two filings will be treated as one thing: an amendment to the Secretary's prior Schedule A.

The new Schedule A listed forty-five employees for total damages of $1,323,846.44. (*Id.*) In comparison, the prior Schedule A listed twenty-three employees for total damages of $250,692.08. On the day of trial, defendants filed their motion in limine to preclude the new Schedule A, and the Court heard arguments on the issue before the bench trial commenced. (ECF #39.) Defendants argued that the timing and prejudice caused by the new Schedule A violated Federal Rules of Civil Procedure 15 and 26, and Local Rule of Civil Procedure 16.1. (*Id.*) The Secretary argued that the new Schedule A "in no way prejudices the other side," "[there is] nothing that's new or a surprise," and "there is no new or additional evidence." (Trial Transcript I:14, 25.)

I precluded the new Schedule A and its accompanying exhibits from being admitted into evidence under Federal Rules of Civil Procedure 15 and 26. (ECF #42.) I also denied the Secretary's motion for reconsideration without prejudice, and stated that I will address the motion for reconsideration more fully, at this time, during the findings of fact and conclusions of law. (ECF #64.)

B.   *Analysis.*

Pursuant to Federal Rule of Civil Procedure 26, "a party must, without awaiting a discovery request, provide to the other parties: . . . a computation of each category of damages claimed by the disclosing party . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii). Pursuant to Federal Rule of Civil Procedure 37, "a party [who] fails to provide information . . . required by Rule 26(a) . . . is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Deitrick v. Costa*, 2019 WL 6614207, *11 (M.D. Pa. Dec. 5, 2019); Fed. Practice and Procedure (Wright & Miller) § 2054 Mandatory Pretrial Disclosure ("The basic goal is to avoid surprise at trial and facilitate receipt of evidence during the trial.").

The Secretary significantly prejudiced the defendants and disrupted the adjudication of the case by asking for a continuance of the trial for reasons unrelated to the Secretary's subsequent action of just amending the damages exhibit. The Secretary asked for a continuance "out of fairness to both parties and all witnesses" so that there could be three consecutive trial dates, and due to new factual issues concerning the tip credit. But months later and on the eve of trial, the Secretary just amended Schedule A to add twenty-two new employees, for a total of forty-five employees, and changed the damages sought from $250,692.08 to $1,323,846.44.

No new evidence was presented at the pretrial conference or in the defendants' pretrial memorandum that provided substance for this change. Rather, it was shown at trial that the Secretary was preparing and finalizing the damages exhibit two weeks before the July trial even though the discovery deadline was in January, the original pretrial conference was in April, and the original trial was set for May. (II:160-61.) Hence, the Secretary requested a continuance for his stated reasons, then rather than

following up on those reasons, the Secretary just amended Schedule A to include much more employees and damages because the Secretary was tardy in making calculations and handling discovery material. The Secretary's actions severely prejudiced the defendants, disrupted the adjudication of this case, are unjustified, and violated Federal Rule of Civil Procedure 26.

The Secretary relies on *Hodgson v. Collonades, Inc.*, 472 F.2d 42 (5th Cir. 1973) in support of his actions. In *Collonades*, the Secretary's original complaint listed 64 employees, and the Secretary sought to amend the complaint during trial to add 63 more employees and $27,000 more in damages. *Id.* at 47. The District Court denied the amendment, but the Fifth Circuit reversed to permit the amendment. *Id.* 47-48. The Fifth Circuit reasoned that under Rule 15(b), the defendant was not prejudiced by the amendment because the issue is only one of mathematical computation in which the defendant had the records of the entire time *Id.* at 48.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) was not enacted when the Fifth Circuit decided *Collonades* in 1973. Nevertheless, I do alternatively hold that the Secretary's new Schedule A is precluded under Federal Rule of Civil Procedure 15. The same reasons supporting my decision to preclude Schedule A under Rule 26 applies to Rule 15 when Schedule A is viewed as a "supplemental" or "amended" pleading rather than a "mandatory disclosure" under Rule 26.

Contrary to *Collonades*, the defendants were prejudiced by the addition of 22 employees and more than one million more dollars in damages on the eve of trial. The defendants would have generally approached and defended the case differently, approached settlement differently, potentially deposed different persons, and potentially

called different witnesses if they had known that the case concerned 45 employees instead of 23, and well over a million dollars of damages instead of a quarter of a million. For example, the new Schedule A changed arguments and evidence regarding who received notice of the tip credit, and when many more employees and damages are at issue then the arguments of whether the violations were willful or not are changed.

For all of these reasons, I found that the Secretary violated Federal Rules of Civil Procedure 26 and Rule 15 without justification, and therefore, the Secretary's motion for reconsideration is denied.

2.  <u>Defendants J. Nanouh, Inc. d/b/a Exeter Family Restaurant is a "covered enterprise," and Michael Nanouh is an "employer."</u>

A business is subject to FLSA's minimum wage and overtime requirements when it is an "enterprise in commerce or in the production of goods for commerce," and it has an "annual gross volume of sales made or business done [of] not less than $500,000." 29 U.S.C. §§ 203(s)(1)(a), 206(a), 207(a). The FLSA also imposes individual liability on "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). Courts assess four factors to determine individual liability on a managerial officer: (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day involvement in employee supervision; and (4) actual control of employee records such as payroll, insurance, or taxes. *In re Enter. Rent-A-Care Wage & Hour Emp't Practice Litig.*, 683 F.3d 462, 469 (3d Cir. 2012). Courts are not confined to the above factors and should consider all relevant evidence. *Id.*

A.  *Relevant Facts.*

The Exeter Family Restaurant was purchased by Joseph Nanouh, and a partner in 1999. (I:117, 130.) Joseph's son, defendant Michael Nanouh, manages the restaurant, and holds himself out as the vice-president. (III:181-82.) Michael's role at the restaurant is best described by stating what he can and cannot do.

During his shifts, Michael operates the hostess booth which is where all customers pay their bills, he calls staff meetings, and he generally supervises all employees. He has the authority to hire and fire employees. He makes rules and issues assignments such as requiring employees to arrive fifteen minutes before their shift, issues "side work" such as preparing condiments and silverware, and he mandated that employees paid for their own uniforms. Lastly, he has access to employee records as he was the person who took responsibility of providing the records to the Department of Labor.

While Michael has the authority to hire and fire employees, he does not necessarily do so if his father is present and he has only fired roughly one person in his many years at the restaurant. He does not set schedules, engage in payroll activities, nor employee benefits. Lastly, he does not have any direct ownership stake in the restaurant. (I:114-34, 156-58, 193; III:114-17.)

B.  *Analysis.*

The first of the four *Enterprise* factors is whether Michael has the authority to hire and fire employees. The testimony showed that Michael has hired numerous employees in the past, and he has the authority to fire employees but rarely does so. The evidence also showed that his authority is limited to the extent that he would not hire and fire employees without his father's approval if his father is in the restaurant. Since Michael

has the authority to hire and fire employees this factor weighs in favor of Michael being an "employer."

The second *Enterprise* factor is whether Michael has the authority to promulgate rules, assignments, and conditions of employment including hours, payroll, and benefits. Michael made rules such as requiring employees to pay for uniforms, and he ceased that rule upon the Department's investigation. He provides assignments by telling employees to prepare silverware and condiments. He sets conditions of employment such as letting servers leave their shift early if they have no customers. But Michael does not handle scheduling, payroll, or benefits. While he does not handle those tasks, those tasks are also easily delegated to a specialized person whereas his authority to promulgate work rules, assignments, and conditions of employment are bona fide aspects of being an employer. Therefore, this factor weighs in favor of Michael being an "employer."

The third *Enterprise* factor is an evaluation of the day-to-day supervision Michael has and the discipline he can enforce. Michael is the supervising manager when he is working. He is at the center of the restaurant in the hostess booth, greeting and seating guests, handling payments, issuing side work to employees, dealing with customer complaints, sending employees home early if they do not have customers, and he has the authority to terminate employees. Therefore, this factor weighs in favor of Michael being an "employer."

The fourth and last *Enterprise* factor is whether Michael has control over employee records such as payroll, insurance, and taxes. Michael does not directly handle these activities nor is he the record keeper of the business, but he was the person to obtain, collect, and hand over the documents to the Department of Labor. Additionally, as

explained in detail below, Michael did involve himself in payroll to the extent that he hid employees' overtime hours from the restaurant's accountant so he could pay overtime in cash and in an amount less than the overtime wage amount. Therefore, this factor weighs in favor of Michael being an "employer."

   C.  *Conclusions of Law.*

First, the restaurant admits that they are an "enterprise" under the FLSA as they are an "enterprise in commerce or in the production of goods," and have an "annual gross volume of sales made or business done not less than $500,000." (ECF #5.) Second, given that each factor weighs in favor of Michael being an "employer" and the lack of any overwhelming relevant evidence to the contrary, I deem that Michael is an "employer" as defined under the FLSA. *See Acosta v. Osaka Japan Restaurant, Inc.*, 2018 WL 3397337, *14-16 (E.D. Pa. July 12, 2018).

3.  <u>Defendants Violated Recordkeeping Requirements, and the Secretary's Calculation of Damages is Adopted.</u>

Section 11(c) of the FLSA requires employers to maintain accurate records to ensure that sections 6 and 7(a) of the FLSA are properly followed. *See Osaka Japan Restaurant, Inc.*, 2018 WL 3397337, *10 (citing *Williams v. Tri-City Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984). An employer must maintain at least three years of information concerning their employees' names, addresses, birthdates, sex, occupation, time and day of the start of the workweek, hourly pay rates, daily and weekly hours worked, total weekly earnings, total weekly overtime pay, additions and deductions from wages, total wages paid per pay period, and the date of payment and period covered by the payment. 29 C.F.R. § 516.2(a).

Defendants readily admit that they did not keep complete and accurate records for the required three-year period, and that they kept no records whatsoever of cash-paid wages. The defendants only retained some shift schedules, and some of the POS clock-in clock-out timecards. Simply put, the defendants wholly violated the recordkeeping requirements of Section 11(c). (III:156-59.)

Where an employer has not kept adequate records, the Secretary may prove damages by showing that employees have "in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687 (1946). The burden of proof then shifts to the employer to produce evidence of the precise work performed by its employees, or to provide evidence that negates the Secretary's just and reasonable inference. *Id.* If the employer fails to satisfy that burden, then the Secretary's evidence should be used to calculate damages. *Id* at 687-88.

The defendants argue that some of the damages can be computed based upon the witness testimony. Various employees testified, in part, that he or she sometimes received $2 per hour, sometimes $30 per shift, or sometimes nothing. (I:90, 113; II:26; III:63-74.) An attempt to make an accurate calculation of damages by using this contradictory and speculative testimony and the incomplete time records that the defendants maintained would be completely unreasonable. Simply put, the defendants wholly violated the FLSA's recordkeeping requirements in various ways, and have not produced any reasonable alternative methods to calculate damages.

On the other hand, the Secretary used the POS system's clock-in and clock-out times, and filled in the gaps where the POS system's records were not maintained with the shift schedules to make the damage calculations as accurate as possible. The defendants even concede that the Secretary's calculations are reasonable and should be used for some of the employees given their lack of recordkeeping. In essence, this concedes that the defendants' proffered method to calculate damages cannot be used for many employees, and that the defendants do not qualify for the tip credit for at least some of their employees because the Secretary's calculations assumes that the tip credit does not apply. (*See* ECF #31, *Def's Br.* at 39-45.)

Accordingly, I find that the defendants violated the recordkeeping requirements of Section 11(c), and I will use the Secretary's calculations to determine damages.

4. Defendants Failed to Properly Pay Minimum Wage, and Do Not Satisfy the Tip Credit Requirements.

The FLSA requires employers to pay employees an hourly minimum wage of $7.25. 29 U.S.C. § 206(a)(1)(c). Employers may pay tipped employees below the minimum wage by claiming a 'tip credit' that "cover[s] the balance between the wage the employer pays and the minimum wage" if the requirements in 29 U.S.C. section 203(m) are met. *Acosta v. Las Margaritas, Inc.*, 2018 WL 6812370, *4 (E.D. Pa. Dec. 27, 2018).

The tip credit requirements are that: (1) the employer informs employees that a tip credit is being claimed and the amount of the credit; (2) the employee earns tips at least equal to the tip credit amount; and (3) the employee retains all tips he or she collects except for a valid tip pool arrangement. §§ 203(m)(2)(A)(i-ii); 29 C.F.R. § 531.59(b); *Las Margaritas, Inc.*, 2018 WL 6812370 at *4. The first two requirements are in dispute.

First, it is contended that defendants cannot prove that they paid employees at least $2.13 because they failed to keep proper records of payments, and to the extent that they did keep records, they often paid employees less than $2.13 per hour. Second, it is argued that the defendants' outdated FLSA posters do not satisfy the tip credit's notice requirement.

The defendants admit that they sometimes paid employees $2.00/hour, $30 per shift, or didn't pay employees for hours worked at all. (*Def's* Br. at 7, 16, 37). Rather, the defendants argue that since they paid employees $2.00/hour or $30 per shift, for the most part, then they should only be liable for the difference between those payments and the tip credit requirement of $2.13/hour. But crediting employers for paying their employees something less than the required amount runs contrary to the tip credit requirements, and runs contrary to Third Circuit precedent. *See Chez Robert*, 28 F.3d at 404 (denying to "alleviat[e] the harsh results of the notice requirement by reducing damages out of an equitable sense that some offset for tips should be allowed.").

The defendants simply underpaid employees by paying them less than $2.13/hour, and they sometimes failed to pay employees for time worked at all. Defendants paid employees in accordance with the handwritten schedules while ignoring the POS system's clock-in and clock-out times. The outcome of this pay-to-shift approach was that their employees did not receive payments for time worked before and after shifts, which was required by Michael Nanouh, thus, employees were not paid for their full amount of time worked. (I:70-71, 89-104, 161, III:86, 111-113.) Additionally, the defendants often paid employees $2.00/hour, which is simply under the tip credit amount of $2.13/hour.

Lastly, the outdated FLSA posters in the restaurant do not provide the requisite notice of the tip credit to employees. While employers need not "explain" the tip credit to employees, they must at least "inform" employees of the tip credit. *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) ("The notice requirement is a firm one: . . . . If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide.") (citation omitted); *see also Salinas v. Starjem Rest. Corp.*, 123 F.Supp.3d 442, 467 (S.D. N.Y. 2015). There is no evidence that the defendants ever explicitly mentioned the tip credit to employees, nor did they tell employees to review the poster. In all, the defendants did nothing to inform their employees of the tip credit, except for having the outdated posters and simply paying them around the tip credit amount of $2.13.

For these reasons, I find that the defendants do not qualify for the tip credit, and that they failed to properly pay minimum wage.

5.   Defendants Improperly Charged Servers for the Cost of Required Uniforms.

Defendants admit that they violated Section 6(a) of the FLSA by requiring employees to pay for required uniforms. (*Def's* Br. at 32-33); *see Barvinchak v. Indiana Reg. Med. Ctr.*, 2008 WL 1847163, at *6 (W.D. Pa. Apr. 23, 2018). Therefore, the following individuals are due $35.75 for paying for their uniforms:

1. Nicole Cazaman;
2. Alicia Clark;
3. Amanda Graul;
4. Christina Grim;
5. Margaret Kazimierowicz;
6. Mary Jo McCord;
7. Ella Polonski;
8. Sophia Polonski;
9. Kelly Robinson;
10. Teidra Schittler;

11. Vanessa Schlegal;
12. Ashley Smith;
13. Virginia Spatz;
14. Bianca Trump;
15. Erika Winslow; and
16. Janelle Yost.

6.   <u>Defendants Failed to Properly Pay Employees for Overtime Hours.</u>

Section 7 of the FLSA requires employers to pay employees who work in excess of forty hours in a workweek "at least one and one-half times the regular rate" per hour. 29 U.S.C. § 207(a)(1). This amounts to $10.875/hour.

The Secretary argues that defendants failed to make proper overtime payments to employees who worked over forty hours a week by hiding overtime hours from their accountant, and paying such hours in cash and in an amount lower than $10.875. For the defendants' sous chef, Ivan Garcia-Lopez, defendants claim that they reasonably and in good-faith believed that Ivan was an exempt salaried executive employee, therefore, they only owe damages to Ivan for the two-year preceding period rather than three years. The Secretary disagrees.

A.   *Relevant Facts.*

Defendants admit that they did not properly pay overtime hours for some employees, and that they paid employees based off of their shift schedules rather than the to-the-minute POS clock-in clock-out system. (*Def's* Br. at 7-9, 35-45)

In regard to Ivan Garcia, he has worked at the restaurant for eighteen years. He began as a line cook and was promoted to be the only Sous Chef. He directs the work of line cooks, prepares soups, and orders desserts and dairy supplies. He works Monday through Saturday for a total of 50 hours a week. According to Mr. Garcia, he is paid $15/hour, but Michael Nanouh claims that he is paid $675 in check and $500 to $600 in

cash per pay period. (*Def's* Br. at 29-32.) Mr. Garcia supposedly has the authority to hire and fire cooks when the Executive Chef is not present, but has never done so. Lastly, he is in charge the kitchen when the Executive Chef is away on vacation.

B. *Analysis.*

The defendants admit that they did not properly pay overtime because they hid overtime hours from their accountant, paid such hours in cash, and paid to the shift schedules rather than the POS system. As for Ivan Garcia, for an employer to affirmatively take the executive employee defense they must show that the employee is compensated by salary and that their primary duty is "management of the enterprise." *See* 29 C.F.R. § 541.100(a); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991). Mr. Garcia's primary duties are to supervise line cooks, manage the kitchen while working under the Executive chef, and to run the kitchen while the Executive Chef is absent. He does not create the menu, order ingredients, or participate in the overall management and operation of the restaurant. His duties, discretion, and responsibilities are entirely limited by the Executive Chef and Michael Nanouh who make actual managerial decisions for the restaurant. Additionally, his wages could hardly be deemed a salary. He testified himself that he is paid by the hour, and more importantly, his pay is reduced when he leaves a shift early or takes vacation time. (I:189-92; *Def's* Br. at 29-32.)

C. *Conclusions of Law.*

For these reasons, I find that the defendants failed to make proper overtime payments, and failed to meet their burden of proving that Ivan Garcia is an exempt

executive employee. The Secretary's calculation for overtime hours and damages will be used.

7.  <u>The Violations Are Willful.</u>

FLSA actions extend for a statute of limitation period of two years, but if the violations are willful then the cause of action extends an additional year. 29 U.S.C. § 255(a). A willful violation is when an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

The above sections display willful actions on behalf of the defendants of disregarding the FLSA requirements. There is not much more egregious behavior than not paying employees for time worked, hiding overtime hours, failing to keep proper records, and charging employees for required uniforms. Further, the defendants purportedly did not cooperate with the Department of Labor amicably, and continued to violate the FLSA even after the Department put the restaurant on notice of violations and during this litigation.

While I heard testimony from many of the defendants' employees that he or she enjoyed working at the restaurant, that it is a family-like atmosphere, and that their manager Michael Nanouh is great to work for, none of that can eliminate or change the nature of the FLSA violations. Not paying employees for time worked, underpaying employees, avoiding overtime payments, and such violations is more than ample evidence that displays willful violations of the FLSA.

8.  <u>Defendants are Liable for Liquidated Damages.</u>

Section 16(c) permits the Secretary "to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages." 29 U.S.C. § 216(c). Liquidated damages are "mandatory" but if an employer proves that they are entitled to discretionary relief based upon good faith and reasonable grounds for their actions, a court may choose to not enforce liquidated damages. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991); *Osaka*, 2018 WL 3397337, at *13. The good faith and reasonable grounds require that the employer had a subjective honest intention to ascertain and follow the FLSA, and that the employer's belief and actions regarding compliance were objectively reasonable. *Cooper Elec. Supply*, 940 F.2d at 907-08.

Where there are multiple willful violations—liquidated damage must follow. Although the defendants paid employees for some, if not most, of their hours worked, and the defendants are not receiving credit for such payments given the FLSA's statutory scheme, that does not show subjective and objective good faith, and reasonable compliance. Not paying employees for time worked, underpaying employees, avoiding overtime payments, and more is ample evidence to enforce liquidated damages.

9. The Department of Labor is Entitled to Injunctive Relief.

The Secretary seeks an injunction under Section 17 of the FLSA to ensure the defendants comply with the FLSA in the future. 29 U.S.C. § 217. In deciding whether to grant an injunction, courts consider (1) the employer's past conduct; (2) the employer's current conduct; and most importantly, (3) whether the employer can be counted on to comply with the FLSA in the future. *Osaka*, 2018 WL 3397337, at *17 (citations omitted).

It certainly appears that the defendants have been violating the FLSA for many years. Of course, the Secretary may only file a suit for the time period limited by the statute of limitations, but the Secretary's evidence revealed that the violations were likely occurring ever since the Joseph Nanouh purchased the restaurant in 1999. The length of time that these violations have been taking place, coupled with the nature of the violations and the Secretary's claim that violations were still occurring during their investigation and even throughout this case, diminishes any expectation that the defendants will come into compliance with the FLSA. Accordingly, an injunction is necessary to ensure that the defendants will comply with the FLSA in the future.

10. Conclusion and Damages.

From March 30, 2014 to April 1, 2018, the period set out by the Secretary, the defendants willfully violated the FLSA's minimum wage, overtime, and recordkeeping requirements. Judgement is hereby entered in favor of the Secretary for the full amount of $250,692.08 as set forth in the admitted Schedule A. The following individuals are due damages in the amounts listed below:

1. Brenda Alena: $26,181.46;
2. Nichole Canzaman: $71.50;
3. Alicia Clark: $71.50;
4. Ivan Garcia-Lopez: $20,269.02;
5. Amanda Graul: $19,759.42;
6. Kristina Grim: $71.50;
7. Ashley Hines: $25,728.34;
8. Margaret Kazimierowicz: $71.50;
9. Mary Jo McCord: $71.50;
10. Rebecca Minicozzi: $43,341.68;
11. Ella Polonski: $1,082.12;
12. Sophia Polonski: $71.50;
13. Kelly Robinson: $71.50;
14. Tiedra Schittler: $2,731.94;
15. Vanessa Schlegel: $71.50;
16. Ashley Smith: $71.50;

17. Brenda Smith: $2,359.26;
18. Virginia Spatz: $71.50;
19. Kimberly Terra: $38,715.82;
20. Bianca Trump: $71.50;
21. Sandra Wilson: $69,593.52;
22. Ericka Winslow: $71.50;
23. Janel Yost: $71.50.

Further, an injunction is issued pursuant to 29 U.S.C. section 217 that requires the

defendants to comply with the FLSA in the future. An Order follows.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
Jeffrey L. Schmehl, J.